**COURT OF CHANCERY**
OF THE
**STATE OF DELAWARE**

ANDRE G. BOUCHARD
CHANCELLOR

Leonard L. Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: March 21, 2017
Date Decided: March 22, 2017

Peter B. Andrews, Esquire
Craig J. Springer, Esquire
Andrews & Springer LLC
3801 Kennett Pike
Building C, Suite 305
Wilmington, DE 19807

S. Mark Hurd, Esquire
Coleen W. Hill, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE 19801

> RE: ***Richard Vento v. Robert J. Curry, et al.***
> Civil Action No. 2017-0157-AGB

Dear Counsel:

This letter decision resolves plaintiff's motion to preliminarily enjoin a vote of the stockholders of Consolidated Communications Holdings, Inc. ("Consolidated") scheduled for March 28, 2017, until certain information concerning the financial interests of Consolidated's financial advisor in the proposed transaction is fully disclosed. For the reasons explained below, the motion is granted.

## I. Background

This action arises out of a proposed transaction whereby Consolidated intends to acquire FairPoint Communications, Inc. ("FairPoint") in a stock-for-

stock merger pursuant to a merger agreement they entered into on December 3, 2016. The transaction is expected to close in mid-2017.[1]

Morgan Stanley & Co. LLC ("Morgan Stanley") served as Consolidated's lead financial advisor and provided the only fairness opinion Consolidated received in connection with the transaction. An affiliate of Morgan Stanley, Morgan Stanley Senior Funding, Inc. ("MSSF"), committed to provide part of $935 million in debt financing for the merger.

Under the merger agreement, Consolidated is required to issue approximately 24.2 million shares of Consolidated common stock to FairPoint stockholders, who would hold approximately 28.7% of the issued and outstanding common stock of the combined company if the merger is approved. As a NASDAQ listed company, Consolidated is required by NASDAQ listing rules to secure stockholder approval before issuing 20% or more of its outstanding common stock. Therefore, the merger can be completed only if Consolidated stockholders vote to approve the proposed share issuance.

On January 26, 2017, Consolidated filed a Form S-4 Registration Statement with the Securities and Exchange Commission, which it amended on February 24, 2017 (the "Amended Registration Statement"). The Amended Registration

---

[1] Verified Class Action Complaint ¶ 21.

Statement announced that a special meeting of Consolidated's stockholders would be held on March 28, 2017, to consider approving the proposed share issuance.

On March 3, 2017, plaintiff Richard Vento, a Consolidated stockholder, filed the complaint in this action against the current members of the Consolidated board of directors alleging a single claim for breach of fiduciary duties in connection with the merger. Specifically, plaintiff alleges that defendants breached their fiduciary duties by failing to disclose certain information relating to Morgan Stanley's conflicts of interest with respect to the proposed transaction.

To his credit, plaintiff seeks relief to correct the alleged disclosure deficiencies in advance of the pending stockholder vote, which is the appropriate time to do so if a stockholder representative truly believes the disclosure claims have merit and truly wishes to obtain meaningful relief for the benefit of the putative class of stockholders he represents.[2] That said, plaintiff waited an

---

[2] *See In re Transkaryotic Therapies, Inc.*, 954 A.2d 346, 360 (Del. Ch. 2008) (noting the Court's preference to have disclosure claims "brought as [motions] for a preliminary injunction before the shareholder vote, as opposed to many months after") (quoting *Globis P'rs, L.P. v. Plumtree Software, Inc.*, 2007 WL 4292024, at *10 (Del. Ch. Nov. 30, 2007)). *See also In re Staples, Inc. S'holders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001) (Strine, V.C.) ("Delaware case law recognizes that an after-the-fact damages case is not a precise or efficient method by which to remedy disclosure deficiencies. A post-hoc evaluation will necessarily require the court to speculate about the effect that certain deficiencies may have had on a stockholder vote and to award some less-than-scientifically quantified amount of money damages to rectify any perceived harm. . . . An injunctive remedy . . . specifically vindicates the stockholder right . . . to receive fair

inordinate amount of time, until March 14, 2017, eighteen days after the stockholder meeting was scheduled, to file his motion for a preliminary injunction. Because the issue presented on this motion is narrow and defendants thus cannot legitimately claim to have been prejudiced by the delay, the motion will not be barred by laches. The reality, however, is that the Court has been pressed into dealing with this matter on an unnecessarily compressed timeframe.

## II.    Analysis

To obtain a preliminary injunction, plaintiff must demonstrate: "(1) a reasonable probability of success on the merits; (2) irreparable harm if the action is not enjoined; and (3) that the need for protection outweighs any harm that can reasonably be expected to befall the defendants if the injunction is granted."[3]

The Amended Registration Statement contains the following disclosure concerning Morgan Stanley's financial interests in the proposed transaction:

> Morgan Stanley provided the Consolidated Board with financial advisory services and a financial opinion . . . in connection with the Merger and Consolidated has agreed to pay Morgan Stanley a transaction fee of $13 million, which is payable upon and is contingent upon the consummation of the Merger. . . . Morgan Stanley

disclosure of the material facts necessary to cast a fully informed vote—in a manner that later monetary damages cannot and is therefore the preferred remedy, where practicable.").

[3] *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 1993 WL 183698, at *4 (Del. Ch. May 29, 1993).

or one or more of its affiliates is providing to Consolidated a portion of the financing required in connection with the Merger, for which Morgan Stanley will receive additional fees from Consolidated. In the two years prior to the date of Morgan Stanley's opinion, in addition to the services provided in connection with the Merger and the opinion, Morgan Stanley has provided financial advisory and financing services to Consolidated and its affiliates and received aggregate fees of between $3.0 million and $4.0 million in connection with such services. During the same period, Morgan Stanley has provided financing services to FairPoint and its affiliates, including as a lender and administrative agent with respect to FairPoint's senior secured credit facilities, and received aggregate fees of less than $1.0 million in connection with such services. Morgan Stanley may seek to provide financial advisory and financing services to Consolidated and FairPoint and their affiliates in the future and would expect to receive fees for the rendering of those services.[4]

Plaintiff's primary grievance is that the Amended Registration Statement fails to disclose any details concerning the amount of compensation Morgan Stanley expects to earn in connection with the financing of the merger.[5] Instead, as the above quote reflects, the Amended Registration Statement simply states, without providing any quantification, that Morgan Stanley or one or more of its affiliates "will receive additional fees from Consolidated" for providing a portion of the financing required for the merger.

---

[4] Answering Br. Ex. A (Am. Registration Statement) at 84.

[5] In its opening brief, plaintiff also challenged the lack of disclosure concerning when Morgan Stanley was first considered and then ultimately selected to finance the merger, and what alternatives, if any, the Consolidated board considered. Plaintiff did not pursue this issue further in his reply brief, and appeared to abandon the issue.

It is well established under Delaware law that "[b]ecause of the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, this Court has required full disclosure of investment banker compensation and potential conflicts."[6]  In *David P. Simonetti Rollover IRA v. Margolis*, the Court was faced with a similar challenge to the adequacy of disclosures relating to a financial advisor's separate financial interest in a proposed transaction.  The Court held that the resolution of the disclosure claim depended on whether the financial advisor's interest in the transaction was material and, if so, whether that interest was quantifiable.[7]  The Court further explained that "it is imperative for the stockholders to be able to understand what factors might influence the financial advisor's analytical efforts . . . A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered in assessing how much credence to give its analysis."[8]

As an initial matter, although plaintiff confusingly refers to MSSF as Morgan Stanley in his papers, the difference is immaterial for this decision.  That MSSF is a separate entity from Morgan Stanley does not change the reality that

---

[6] *In re Del Monte Foods Co. S'holders Litig.*, 25 A.3d 813, 832 (Del. Ch. 2011).

[7] *David P. Simonetti Rollover IRA v. Margolis*, 2008 WL 5048692, at *8 (June 27, 2008).

[8] *Id.*

they are affiliates and that the financing fees MSSF stands to receive in connection with the transaction create a potential conflict of interest for Morgan Stanley.

In their opposition papers, defendants did not seriously dispute the materiality of the financing fees MSSF might be entitled to as a result of the merger. Indeed, because the magnitude of such fees would affect a voting stockholder's assessment of the independence of the financial advisor, whose "opinion of fairness for a proposed transaction is one of the most important process-based underpinnings of a board's recommendation of a transaction to its stockholders,"[9] I find that information related to the amount of fees Morgan Stanley or its affiliates expect to receive in connection with financing the merger is material.

Nor did defendants argue in their papers that the relevant fees are not quantifiable. Instead, they contended that the range of financing fees MSSF might receive as a result of the transaction already could be determined by piecing together information from publicly available documents.

Specifically, defendants point to a section in the Amended Registration Statement entitled "Pro Forma Adjustments—Balance Sheet," which lays out certain pro forma adjustments to Consolidated's balance sheet as of September 30,

2016, as if the merger had occurred on that date.[10]  A table in that section contains a preliminary estimate of the net cash to be used in the merger.  The fourth line item in the table is $14.025 million for "financing commitment fees."[11]  From this data point, defendants next point to a Form 8-K that Consolidated filed on December 5, 2016.  About 100 pages into that filing, in an attachment entitled "Project Yankee Commitment Letter," MSSF is identified as contributing 40% of the aggregate principal amount of the debt financing.[12] According to defendants, "[a]rmed with these disclosed figures, a stockholder can reasonably conclude that MSSF stands to receive approximately 40% of the $14.025 million financing commitment fees,"[13] which works out to about  $5.6 million.

In *Weingarden v. Meenan Oil Co.*, this Court held that "[d]isclosure is inadequate if the disclosed information is 'buried' in the proxy materials."[14]  The "buried facts" doctrine is particularly applicable here.  One reasonably would expect that all material facts concerning a financial advisor's potential conflicts of

---

[9] *Id.*

[10] Answering Br. Ex. A (Am. Registration Statement) at 128.

[11] *Id.*  This information also could be found on page 129 of the Amended Registration Statement in a table containing pro forma adjustments to stockholders' equity.

[12] Andrews Aff. Ex. A.

[13] Answering Br. 10-11.

[14] *Weingarden v. Meenan Oil Co.*, 1985 WL 44705, at *3 (Del. Ch. Jan. 2, 1985).

interest would be disclosed in plain English in one place, such as in the portion of the Amended Registration Statement block-quoted above.

Although that part of the Amended Registration Statement disclosed (1) the $13 million advisory fee Morgan Stanley stands to receive if the merger is approved and (2) the amount of fees Morgan Stanley received during the prior two years from Consolidated and its affiliates (between $3 million to $4 million) and from FairPoint and its affiliates (less than $1.0 million) for financial advisory and financing services, it fails to disclose any facts concerning the magnitude of the financing fees Morgan Stanley and its affiliates stand to receive if the merger is approved. Instead, a stockholder can only make a guess about this information by attempting (with great difficulty) to piece together the answer from information buried in a 248-page Amended Registration Statement and an equally lengthy Form 8-K filed more than ten weeks before the Amended Registration Statement. I say "guess" because, even if a stockholder could successfully dig up the two pieces of information discussed above, the stockholder still would not know for sure the amount of the financing commitment fees MSSF stands to receive because that amount would not necessarily be commensurate with the percentage of MSSF's financing commitment. Given Morgan Stanley's lead advisory role in the

transaction, for example, it may have been able to extract a higher percentage of the aggregate commitment fees relative to its financing commitment.

A stockholder should not have to go on a scavenger hunt to try to obtain a complete and accurate picture of a financial advisor's financial interests in a transaction. The amount of fees Morgan Stanley and/or its affiliates stand to receive for providing financing in connection with the proposed merger is material and quantifiable, and there is simply no excuse for Consolidated's failure to disclose that information in a clear and transparent manner along with related information bearing on its financial advisor's potential conflicts of interest.[15] Accordingly, I find under the present circumstances that it is reasonably probable that plaintiff will succeed on the merits in demonstrating that Consolidated's disclosures relating to Morgan Stanley's potential financial interests in the merger are inadequate.

I also find that the second and third elements of the standard for issuing a preliminary injunction weigh in favor of granting such a relief. This Court has held on numerous occasions that "the threat of an uninformed stockholder vote

---

[15] Adding to the confusion is the fact that the commitment letter attached to the December 5, 2016, Form 8-K is the original credit agreement between the lenders and Consolidated. This agreement was later amended twice on December 14, 2016, and December 21, 2016.

constitutes irreparable harm."[16]  In addition, although the preliminary injunction potentially could affect the current stockholder meeting date, the potential burden caused by a limited delay is outweighed by the benefit of the added disclosure, which is necessary for the stockholders to cast an informed vote.  Therefore, the balance of equities favors the issuance of a preliminary injunction as well.

In view of the above, I will preliminarily enjoin the special meeting of the stockholders of Consolidated, scheduled to take place on March 28, 2017, until five days[17] after Consolidated has supplemented its disclosures to include a clear and direct explanation of the amount of financing-related fees that Morgan Stanley or any of its affiliates stands to receive in connection with the merger if it is approved.[18]  This information should be disclosed in a filing that provides it along

---

[16] *ODS Techs. L.P. v. Marshall*, 832 A.2d 1254, 1262 (Del. Ch. 2003).  *See also In re MONY Group Inc., S'holder Litig.*, 852 A.2d 9, 18 (Del. Ch. 2008) ("This disclosure violation threatens irreparable harm because stockholders may vote 'yes' on a transaction they would have voted 'no' on if they had access to full or nonmisleading disclosures regarding the [transaction].").

[17] Plaintiff's counsel indicated during argument that five days would be sufficient for dissemination of the supplemental information.  Thus, if the supplemental disclosures are made promptly, it should not be necessary to delay the scheduled meeting date.

[18] As used above, the term "financing-related fees" refers to any commitment fee or other forms of fees that Morgan Stanley or its affiliates will receive in connection with arranging financing for the merger, including syndication fees.  It is undisputed that the interest rate terms of the $935 million term loan, which are disclosed on page 118 of the Amended Registration Statement, reflect market rates, and defendants' counsel has represented that MSSF syndicated that portion of the term loan ($375 million) for which

with the other information from the Amended Registration Statement concerning Morgan Stanley's financial interests in the merger, quoted above, so that the stockholders have a complete picture of the facts in one place. Plaintiff's counsel is directed to confer with defense counsel and to submit a form of order implementing this ruling by 3:00 p.m. today.

Sincerely,

*/s/ Andre G. Bouchard*

Chancellor

AGB/gm

---

it provided a commitment. Thus, no further disclosure is necessary concerning the possible range of interest payments or ticking fees that could accrue on the term loan.